1  KING LAW OFFICES
   CATHERINE KING   SBN 145940
2  2051 HILLTOP DR., STE A28
   REDDING, CA 96002
3  PH: (530) 221 2640; FAX: 866 808 2223
   EMAIL: king_catherine@att.net
4

5  Attorney for Plaintiffs

6

7

8  **UNITED STATES DISTRICT COURT**

9  **EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  STEPHEN W. BRANCO AND SARI HUMES BRANCO, | CASE NO. |
| 12  Plaintiffs, | COMPLAINT FOR: |
| 13  v. | 1. VIOLATION OF THE TRUTH IN LENDING ACT (15 U.S.C. § 1601 et seq.) |
| 14  BANK OF AMERICA; WMC MORTGAGE CORPORATION; UNITED VISION FINANCIAL REALTY, INC.; DAN MICHAELS; JEREMY ZAFT and DOES 1-20 inclusive, | 2. VIOLATION OF CALIFORNIA ROSENTHAL ACT |
| | 3. NEGLIGENCE |
| | 4. VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT (12 U.S.C. § 2605 et seq.) |
| Defendants. | 5. BREACH OF FIDUCIARY DUTY |
| | 6. FRAUD |
| | 7. VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 et seq. |
| | 8. BREACH OF CONTRACT |
| | 9. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING |
| | DEMAND FOR JURY TRIAL |

     Plaintiffs Stephen W. Branco and Sari Humes Branco ("Plaintiffs"), by and through their counsel, for their Complaint against Defendants Bank of America ("BOA"), WMC Mortgage Corporation ("WMC"), United Vision Financial Realty. Inc. ("UVFR"), Dan Michaels ("Michaels"), and Jeremy Zaft ("Zaft") (collectively "Defendants"), plead as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction based on federal question under 28 U.S.C. §§ 1331 and 1367, 18 U.S.C. § 1964(c) and 15 U.S.C. § 1640(e). This is an action asserting violations of federal statutes commonly known as the Truth In Lending Act ("TILA") (15 U.S.C. § 1601 et seq.), the Real Estate Settlement Procedures Act ("RESPA") (12 U.S.C. § 2601 et seq.) and its implementing regulations, 12 C.F.R. Part 226, et seq. ("Regulation Z"), with additional claims under California state law. These claims all arise out of the same controversy and sequence of events.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events giving rise to the claim occurred in this judicial district.

3. This Court has personal jurisdiction over the parties as all Defendants engage in business within the State of California and the Eastern District and thus have sufficient contacts.

4. Jurisdiction of this Court for the pendent state claims is authorized by Federal Rule of Civil Procedure 18(a).

5. Defendants, and each of them, regularly engage in business in the State of California and regularly provide mortgage loans and related services to residents in the State of California who wish to obtain a mortgage loan, and who contact or are contacted by a loan officer for assistance in obtaining the necessary financing.

6. Plaintiffs bring this action against Defendants for damages and harm resulting from the Defendants' negligent, fraudulent and unlawful conduct concerning a residential mortgage loan transaction with the Plaintiffs.

## PARTIES

7. The residential property, subject to this Complaint, is located at 19737 Mella Drive, Volcano, County of Amador, State of California ("Property").

8. Plaintiffs are informed and believe, and thereon allege that at all times mentioned in this Complaint, Defendants BOA and WMC are diversified financial marketing and/or services corporations engaged primarily in residential mortgage banking and/or related businesses.

9. At all times mentioned in this Complaint, Defendants UVFR, Michaels, and Zaft sold Plaintiffs the mortgage involved herein.

10. At all times mentioned in this Complaint, Defendant Zaft was the loan officer who sold Plaintiffs the mortgage at issue. At that time, Defendant Zaft was licensed by the California Department of Real Estate as a salesperson. Defendant Zaft held himself out to Plaintiffs as a loan officer employed by Defendant UVFR, and was acting within the course and scope of that employment when they came into contact with Plaintiffs and sold Plaintiffs the mortgage at issue.

11. At all times mentioned in this Complaint, Defendant Michaels was a real estate Broker licensed by the State of California Department of Real Estate, and the Broker of record for Defendant UVFR.

12. Plaintiffs are ignorant of the true names and capacities of the Defendants sued herein under the fictitious names Does 1 through 20, inclusive, and Plaintiffs will amend this Complaint to allege such names and capacities as soon as they are ascertained. Plaintiffs are informed and believe, and thereon allege that each of said fictitiously named Defendants are responsible in some manner for the wrongful acts complained of herein.

13. Defendants, and each of them, at all relevant times herein were and still are agents for one another, and acting under the course and scope thereof, with knowledge and consent of each other.

**GENERAL ALLEGATIONS**

14. This action arises out of a loan related activity to the Property of which the Plaintiffs are the rightful owners.

15. Beginning in 1998, and such facts are so well known as to be Judicially Noticeable under Federal Rule of Evidence 201 and California Evidence Code §§ 451 and 452, lenders, their agents, employees, and related servicers, including Defendants, developed a scheme to rapidly

1  infuse capital into the home mortgage lending system by selling mortgages on the secondary
2  market, normally three to five times, to create a bankruptcy remote transaction. The lenders, their
3  agents, employees, and related servicers, including Defendants, then pooled these mortgages into
4  large trusts, securitizing the pool and selling these securities on Wall Street as mortgage backed
5  securities, bonds, derivatives and insurances, often for twenty or thirty times the original
6  mortgage.

16. In "selling" these mortgage notes on the secondary market, Defendants failed to follow the basic legal requirements for the transfer of a negotiable instrument and an interest in real property. While lenders could have simply gone to Congress to amend existing law so that it would allow for their envisioned transfers, they did not. Instead the Defendants simply ignored the legal requirements.

17. In fact, no interest in the Mortgage Note, Deed of Trust or Property was ever legally transferred to any of the Defendants, and that the Defendants are in effect straw men, and parties without any standing before this Court to assert legal rights with respect to this contractual transaction.

18. Further, as this process became more and more profitable, the underwriting requirements were repeatedly reduced to ensure more and more unsuspecting borrowers. As the lenders reduced the underwriting requirements, they introduced the concept of "churning" loans involving a calculated plan to repeatedly refinance borrowers' loans, taking as much equity as possible, and artificially driving up housing prices.

19. Defendant WMC included, regularly trained, directed, authorized and/or participated with mortgage brokers to implement this scheme, giving them monetary incentives to violate the borrowers' trust.

20. On or about August 28, 2006, Defendant Zaft approached Plaintiffs telling them that he was the loan officer for Defendant UVFR, and solicited them to refinance their residence.

21. Defendant Zaft advised Plaintiffs that he could get them the "best deal" and the "best interest rates" available on the market. Defendant Zaft knew or should have known that these assurances were false and misleading.

22. Defendant Zaft advised Plaintiffs that he could get them 100% financing for their residence, that their loan would be a fixed rate loan. However, Defendant Zaft actually sold Plaintiffs a loan with an adjustable rate rider that had an interest rate that starting at 6.025%, a cap of 12.525%, and carried a 3 year prepayment penalty. Plaintiffs' loan had a 10 year interest only feature, which would cause Plaintiffs' loan to negatively amortize.

23. The standard housing and debt to income ratios are 33% for housing and 38% for debt to income. The total monthly housing payment including taxes and insurance based on actual income is well over 100%. Using the fraudulent income provided by Defendant Zaft, Plaintiffs' housing ratio would approximately be 39.35% for housing and 49.26% for debt to income. When using Plaintiffs' fully amortized and/or fully indexed mortgage payment, Plaintiffs' housing ratio was 64.70% for housing and 72.62% for debt to income.

24. Industry standard for broker fees are generally between 1%-2% of the loan value. Defendant UVFR received a loan origination fee of $11,000.00 and a yield spread premium of $13,130.00, this results in total broker compensation of $24,130.00. The compensation Defendant UVFR received is 14.17% of the Plaintiffs' total loan value. Plaintiffs are informed and believe, and thereon allege that the broker fees are excessive and are in violation of the Home Owner and Equity Protection Act ("HOEPA") § 32, California high cost mortgage.

25. Plaintiffs called Defendant Michaels and Zaft to cancel the loan. Plaintiffs also completed the 3 day right to rescission. However, Plaintiffs were told several times that Defendants Michaels and Zaft were unavailable and Plaintiffs could leave a message. Plaintiffs did not receive a phone call back from Defendants Michaels and Zaft, nor did Plaintiffs receive any direction on how to send in the Right to cancel form.

26. Defendant Zaft further advised Plaintiffs that if the loan ever became unaffordable, they would simply refinance it into an affordable loan, something Defendant Zaft knew or should have known was false and misleading. Defendant Zaft knew or should have known that these misrepresentations were designed to induce Plaintiffs to accept this loan to their detriment.

27. Plaintiffs were not given a copy of any of the loan documents prior to closing as required. At closing, Plaintiffs were only given a few minutes to sign the documents. The notary

did not explain any of the loan documents nor were Plaintiffs allowed to review them. Plaintiffs were simply told to sign and initial the documents provided by the notary. Further, Plaintiffs did not receive the required copies of a proper notice of cancellation.

28. The facts surrounding this loan transaction were purposefully hidden to prevent Plaintiffs from discovering the true nature of the transaction and the documents involved therein. Facts surrounding this transaction continue to be hidden from the Plaintiffs to this day.

29. On or about November 28, 2006, Plaintiffs completed the loan on the Property. The terms of the loan were memorialized in a Promissory Note, which was secured by a Deed of Trust on the Property. The Deed of Trust identified Westwood Associates as Trustee, and Defendant WMC as Lender.

30. On or about August 13, 2009, a Qualified Written Request under RESPA ("QWR" or "Request") was mailed to Defendant BOA. The QWR included a demand to rescind the loan under the TILA provisions. Defendant BOA has yet to properly respond to this Request.

31. On information and belief, Plaintiffs allege that each of the Defendants are not a "person entitled to enforce" the security interest under the Note and the Deed of Trust, as defined in California Commercial Code § 3301. Defendants sold home loans, Plaintiffs' home loan included, to other financial entities, which "pooled" large numbers of loans, put them into trusts, and sold securities based on such loans. Defendants do not own the loan subject to this action, and are not entitled to enforce the security interest.

32. Defendants regularly approved loans to unqualified borrowers and implemented unlawful lending practices. Further, Defendant WMC employed brokers and loan officers, Defendants Zaft and Michaels included, who were paid commissions based on the volume of loans they sold to consumers, Plaintiffs included. Defendant WMC's loan officers received a greater commission or bonus for placing borrowers in loans with relatively high yield spread premiums. As such, borrowers, Plaintiffs included, were steered and encouraged into loans with terms unfavorable to them, or loans which the borrowers, Plaintiffs included, were not qualified to obtain.

33. Defendants are now attempting to obtain putative legal title to Plaintiffs' Property

without having established that either of them was ever a "person entitled to enforce" the security interest under the Note and the Deed of Trust.

34. Each Defendant, in fact, is not a "person entitled to enforce" said interest. No legal transfer of the Mortgage Note, Deed of Trust or any other interest in Plaintiffs' Property was ever effected that gave any of the Defendants the right to be named a trustee, mortgagee, beneficiary or an authorized agent of trustee, mortgagee or beneficiary of Plaintiffs' Mortgage Note, Deed of Trust or any other interest in Plaintiffs' Property.

35. Plaintiffs entered into a loan transaction with Defendant WMC, which was subject to finance charges, and which was initially payable to Defendant WMC under the Deed of Trust.

36. Plaintiffs' Loan is subject to TILA provisions and its implementing regulations, 12 C.F.R. Part 226 ("Regulation Z"). TILA grants consumers a three-day right to cancel certain types of real estate loan transactions. This three-day right to cancel applies to Plaintiffs' Loan with the Defendants.

37. When the loan was consummated, Plaintiffs did not receive the required documents and disclosures, including, but not limited to the TILA disclosure, and the required number of copies of the Notice of Right to Cancel stating the date that the rescission period expires.

38. Under TILA and Regulation Z, Defendants were required to clearly and conspicuously disclose the "amount financed" and the "finance charge," among other things, in connection with the Loan.

39. Defendant WMC and Defendant Michaels, as the agent of the Lender, were required to provide Plaintiffs with said disclosures, but failed to do so.

40. In all of the wrongful acts alleged herein, Defendants, and each of them, have utilized the United States mail, telephones and internet in furtherance of their pattern of unlawful and illegal conduct to collect on negotiable instruments when they were not entitled to do so.

41. Further, Defendants fraudulently added costs and charges to the payoff amount of the Note that were not justified or proper under the terms of the Note or the law.

42. Defendants represented that they have the right to payment under the Mortgage

Note, payment of which was secured by the Deed of Trust. Whereas in fact, Defendants, and each of them, are not the real parties in interest because they are not the legal trustee, mortgagee or beneficiary, nor are they authorized agents of the trustee, mortgagee or beneficiary, nor are they in possession of the Note, or holders of the Note, or non-holders of the Note entitled to payment, as required by the California Commercial Code §§ 3301 and 3309, and California Civil Code § 2924 et seq.

43. Defendants engaged in a civil conspiracy where by they secreted the nature of the misdeeds alleged herein, the roles and identities of the various entities that were purportedly handling their Loan at any given time, and the transfers of the loan documents and negotiable instruments that are the subject of this action.

44. Defendants misrepresented material facts with the intent of forcing Plaintiffs to pay large sums of money to the Defendants, to which they were not entitled,, resulting in profit for the Defendants.

45. The misrepresentations and allegations stated herein were all discovered within the past year, such that any applicable statute of limitations are extended or should be extended pursuant to the equitable tolling doctrine or other equitable principles. Even through the exercise of reasonable diligence, Plaintiffs would still not have been able to learn of or file their claim on time.

**FIRST CAUSE OF ACTION**

**VIOLATION OF TRUTH IN LENDING ACT**

**15 U.S.C. § 1601 et seq.**

**(Against Defendant WMC)**

46. Plaintiffs incorporate here each and every allegation set forth above.

47. The Loan transaction at issue is a consumer credit transaction subject to the provisions of TILA.

48. TILA grants consumers a three-day right to cancel certain residential mortgage loan transactions. Pursuant to 15 U.S.C. § 1635(a), the three-day cancellation period begins upon the latter of the following events: (1) the "consummation of the transaction"; (2) the "delivery of

the information and rescission forms" required by that section; or (3) delivery of accurate "material disclosures" required by TILA. (15 U.S.C. § 1635(a).) The "material disclosures" that must be provided to the consumer include accurate disclosure of the annual percentage rate, all finance charges and the amount financed. (15 U.S.C. § 1602(u).)

49. If the required notice of cancellation is not provided, or if the required "material disclosures" are not delivered, then the right to cancel extends to three years after the date of the loan, or if the facts of the transaction were hidden from the consumer, three years from the date consumer discovered the hidden facts. (15 U.S.C. § 1635(f).) If a consumer has the right to rescind against a creditor, the right will also apply to any assignees of that creditor. (15 U.S.C. § 1641(c).)

50. A consumer may exercise their right to cancel a transaction by delivering a written notification of the consumer's intent to rescind to the creditor's place of business. (12 C.F.R. § 226.23(a)(2).) The consumer's notice to rescind is effective upon mailing. The notice mailed to the agent servicing the loan is effective notice on the holder of the mortgage. (12 C.F.R. § 226.23(a)(2).)

51. When a consumer rescinds a mortgage transaction, the security interest giving rise to the right of rescission becomes void and the consumer is not liable for any amount, including any finance or other charge. (15 U.S.C. § 1635(b).)

52. Within twenty (20) days after the receipt of a consumer's election to cancel the transaction, the creditor must return to the consumer all money or property given, including all interest and finance charges paid, and shall take all action necessary or appropriate to reflect the termination of any security interest created under the transaction. (15 U.S.C. § 1635(b); 15 C.F.R. § 226.23(d).)

53. Defendant WMC is a "creditor" as that term is defined by 15 U.S.C. §1602. The transaction between Plaintiffs and Defendant WMC was a consumer loan transaction wherein Defendant WMC extended credit to the Plaintiffs, and such credit was secured by an interest purportedly held by Defendant WMC in the Property.

54. As a consumer credit transaction, Defendant WMC was required to provide

Plaintiffs with the mandatory TILA disclosure statements and the notice of the Plaintiffs' right to rescind, specifying the date on which the three-day rescission period expires.

55.     Pursuant to Regulation Z, 12 C.F.R. § 226.23(a)(3), Plaintiffs have a continuing right to rescind the loan transaction for up to three years after consummation of the transaction pursuant to 15 U.S.C. § 1635(a) and (f) and 12 C.F.R. § 226.23(b)(5).  Plaintiffs hereby give notice of rescission by and through this Complaint.

56.     In the course of the transaction described herein, Defendant WMC violated TILA by failing to provide required disclosures prior to consummation of the transaction as required by 15 U.S.C. § 1638, failed to make required disclosures clearly and conspicuously in writing as required by 15 U.S.C § 1632(a), 12 C.F.R § 226.5(a)(1), failed to timely deliver to Plaintiffs TILA notices as required by 15 U.S.C. § 1638(b), and failed to disclose all finance charge details, the annual percentage rate based upon properly calculated and disclosed finance charges and amounts financed as defined by 15 U.S.C. § 1602(u).

57.     Records from the transaction indicate that Defendant WMC extended credit to Plaintiffs without regard to their ability to pay, and falsified requisite income and appraisal information to get the loan approved.  Defendant WMC has engaged in a pattern and practice of extending credit to consumers, Plaintiffs included, under high rate mortgages without regard to the consumers' repayment ability or the actual value of the property.

58.     Had Defendant WMC properly and fully disclosed the terms of this loan pursuant to TILA, Plaintiffs would not have agreed to enter into this loan transaction or would have sought a loan with more favorable terms elsewhere.

59.     Defendant WMC is liable to the Plaintiffs in the amount of twice the finance charge, actual damages to be established at trial, and costs in accordance with 15 U.S.C. § 1640(a).

60.     As a result of Defendant WMC's conduct, Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial, which they are entitled to recover.

61.     As a result of Defendant WMC's conduct, Plaintiffs are entitled to declaratory and injunctive relief preventing Defendant WMC from taking any action to collect on the loan, and/or

to transfer the Property.

## SECOND CAUSE OF ACTION

## VIOLATION OF CALIFORNIA ROSENTHAL ACT

## CALIFORNIA CIVIL CODE § 1788 et seq.

**(Against Defendant BOA)**

62. Plaintiffs incorporate here each and every allegation set forth above.

63. Plaintiffs allege that Defendant BOA is a debt collector within the meaning of the Rosenthal Act in that they regularly, in the course of their business, on behalf or themselves or others, engage in the collection of debt.

64. Defendant BOA used unfair and unconscionable means to collect a debt not owed to Defendant BOA or its principal by sending deceptive letters and making phone calls to Plaintiffs demanding payment.

65. Defendant BOA made false reports to credit reporting agencies about Plaintiffs' credit standing, falsely stating the amount of Plaintiffs' mortgage debt, falsely stating that a debt was owed to Defendant BOA, and falsely stating Plaintiffs' payment history.

66. Further, Defendant BOA increased the amount of Plaintiffs' mortgage debt by stating amounts not permitted by law or contract, including, but not limited to, excessive service fees, attorneys' fees, and late charges.

67. Defendant BOA's actions have caused Plaintiffs actual damages, including, but not limited to, severe emotional distress, such as loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness and depression.

68. As a result of Defendant BOA's violations, Plaintiffs are entitled to statutory damages in an amount to be determined at trial, actual damages according to proof, and costs and reasonable attorneys' fees.

## THIRD CAUSE OF ACTION

## NEGLIGENCE

**(Against all Defendants)**

69. Plaintiffs incorporate here each and every allegation set forth above.

70. Defendants UVFR, Michaels, and Zaft owed a duty to the Plaintiffs to exercise reasonable skill and care in the exercise of the agency duties for the Plaintiffs' benefit and best interest and to perform acts as brokers of loans in such a manner as to not cause Plaintiffs harm.

71. Defendants UVFR, Michaels, and Zaft breached their duty to the Plaintiffs when they used their knowledge and skill to direct Plaintiffs into a loan for which they were not qualified based upon their income as stated in the documents provided to Defendants UVFR, Michaels, and Zaft.

72. Defendants UVFR, Michaels, and Zaft further breached their duty to Plaintiffs by directing them into a loan transaction that they may not have otherwise qualified for by industry standards, resulting in excessive fees paid by the Plaintiffs and payments in excess of Plaintiffs' ability to pay.

73. Defendant WMC directly ordered, authorized and participated in Defendants UVFR's, Michaels', and Zaft's conduct. As a result, Defendant WMC owed a duty to the Plaintiffs to perform acts in such a manner as to not cause Plaintiffs harm. In addition, Defendant WMC breached its duty of care to the Plaintiffs when it failed to make the required disclosures to the Plaintiffs, failed to maintain the original Mortgage Note, and failed to properly assign or transfer the negotiable instrument(s).

74. Defendant BOA owed Plaintiffs a duty of due care. Defendant BOA breached its duty of care to the Plaintiffs when it took payments to which it was not entitled, charged fees it was not entitled to charge, and wrongfully made or otherwise authorized negative reporting of Plaintiffs' creditworthiness to various credit bureaus. Additionally, BOA had a statutory duty to Plaintiffs to properly respond to Plaintiffs' Qualified Written Request pursuant to 12 U.S.C. § 2605(e), and to give Plaintiffs notice of the transfer of the servicing rights to their loan pursuant to 12 U.S.C. § 2605(c).

75. As a result of Defendants' negligence, Plaintiffs suffered and continue to suffer harm, and are entitled to damages according to proof and/or other relief as the Court deems just.

### FOURTH CAUSE OF ACTION

### VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT

**12 U.S.C. § 2605 et seq.**

**(Against Defendants BOA and WMC)**

76. Plaintiffs incorporate here each and every allegation set forth above.

77. The Loan transaction between Plaintiffs and Defendants BOA and WMC is a mortgage loan covered by RESPA.

78. A violation of RESPA is also made unlawful under California state law by Financial Code § 50505, which states: "[a]ny person who violates any provision of [RESPA] or any regulation promulgated thereunder, violates this division [California Residential Mortgage Lending Act]."

79. Plaintiffs are not certain at this time exactly which of Defendants was actually the servicer of the Loan at any given time. Pursuant to 12 U.S.C. §§ 2605(b) and 2605(c), Defendants WMC and BOA had a statutory obligation to notify Plaintiffs, within 15 days, of the assignment, sale, or transfer of the servicing rights to Plaintiffs' loan. Defendants WMC and BOA failed to provide Plaintiffs notice of the assignment, sale, or transfer of servicing rights to Plaintiffs' loan.

80. Defendant WMC violated RESPA at the time of the closing of the Loan subject to this Complaint by failing to correctly and accurately comply with the disclosure requirements of 12 U.S.C § 2601 et seq. and Regulation X.

81. Plaintiffs have served Defendant BOA a QWR that identified Plaintiffs' name, loan number, and a statement of reasons for Plaintiffs' belief that the loan was in error. Plaintiffs' QWR, among other things, also sought rescission of the loan and requested production of service related documents. Defendant BOA violated RESPA, 12 U.S.C. § 2605(e)(2), by failing and refusing to provide a proper written explanation or response to Plaintiffs' QWR.

82. Defendant BOA has engaged in a pattern or practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA as set forth in 12 U.S.C. §2605.

83. Defendant WMC further violated 12 U.S.C. § 2607 by receiving "kickbacks" or referral fees disproportional to the work performed.

84. As a result of Defendants BOA's and WMC's failure to comply with RESPA, Plaintiffs have suffered and continue to suffer damages and costs of suit. Plaintiffs are entitled to

recover statutory damages, actual damages in an amount to be determined at trial, and costs and reasonable attorneys' fees.

## FIFTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY
### (Against Defendants Michaels, Zaft, UVFR, and WMC)

85. Plaintiffs incorporate here each and every allegation set forth above.

86. Defendants Michaels, Zaft, UVFR, and WMC were all agents for the Plaintiffs by express and implied contract and by operation of law.

87. Defendant WMC gained a fiduciary duty to Plaintiffs by directly ordering, authorizing and participating in Defendants Michaels', Zaft's, and UVFR's tortious conduct.

88. Defendant WMC regularly trained, directed, authorized and participated with mortgage brokers and loan officers, Defendants Michaels and Zaft included, to implement this scheme, including giving them monetary incentives to violate the borrowers' trust, Plaintiffs included.

89. Plaintiffs hired Defendants UVFR, Michaels, and Zaft as their agents for the purpose of obtaining a Loan to refinance the Property.

90. Pursuant to an agreement between the parties, Plaintiffs agreed to pay Defendants UVFR, Michaels, and Zaft a commission from the proceeds of their Loan and agreed to pay Defendant WMC substantial fees to originate their loan.

91. Defendants UVFR, Michaels, and Zaft, by and through their agents, and Defendant WMC through its interjection into the brokerage of the loan as described above, owed a fiduciary duty to the Plaintiffs to act primarily for their benefit, to act with proper skill and diligence, and not to make a personal profit from the agency at the expense of their principal, the Plaintiffs.

92. As Plaintiffs' agents, Defendants owed Plaintiffs a duty of loyalty and a duty to deal fairly with them at all times.

93. Defendants willfully or recklessly breached their fiduciary duty and duty of loyalty by obtaining a mortgage loan for them that had unfavorable terms and that they could not ultimately afford, by not disclosing the negative consequences of said loan, by securing a secret

1  profit for themselves, by not properly complying with TILA and RESPA requirements, and by
2  engaging in unfair business practices.

3      94.    Defendant WMC, through its own action, interfered with Defendants Michaels'
4  and Zaft's fiduciary obligations by offering Defendants Michaels and Zaft, respectively, training,
5  direction and incentives to breach their fiduciary duty by means of creating and participating in a
6  scheme that created an illusion to consumers that they are being informed of all of the material
7  facts, when in fact they are not.

8      95.    Plaintiffs have been damaged as a result of Defendants' breach, and are entitled to
9  actual damages.

10      96.    Defendants consciously disregarded Plaintiffs' rights, deliberately breaching their
11  respective fiduciary duties, showing willful misconduct, malice, fraud, wantonness, oppression
12  and entire want of care, thus authorizing the imposition of punitive damages pursuant to
13  California Civil Code § 3294.

14  **SIXTH CAUSE OF ACTION**

15  **FRAUD**

16  **(Against all Defendants)**

17      97.    Plaintiffs incorporate here each and every allegation set forth above.

18      98.    As alleged herein, Defendants Michaels, Zaft, and UVFR made false
19  representations to Plaintiffs regarding material facts, including but not limited to, interest rates,
20  financing options, availability of refinancing, and Plaintiffs' qualification for this loan, at the
21  inception of this transaction, designed to fraudulently induce Plaintiffs to enter into this
22  transaction.

23      99.    As alleged herein, Defendant WMC regularly trained, directed, authorized and
24  participated with mortgage brokers and loan officers to implement this fraudulent scheme,
25  training brokers and loan officers, Defendants Michaels and Zaft included, to direct unsuspecting
26  borrowers into toxic loan, giving brokers direction as to which toxic loans to direct borrowers
27  into, directing their underwriters to approve loans to these unqualified borrowers and giving the
28  brokers and loan officers monetary incentives to violate the borrowers' trust, Plaintiffs included.

100. As alleged herein, Defendant BOA misrepresented to Plaintiffs that BOA has the right to collect monies from Plaintiffs on its behalf or on behalf of others when Defendant BOA had no legal right to collect such monies.

101. These material representations made by Defendants were false.

102. Defendants knew that these material representations were false when made, or these material representations were made with reckless disregard for the truth.

103. Defendants intended that Plaintiffs rely on these material representations.

104. Plaintiffs reasonably relied on said representations.

105. As a result of Plaintiffs' reliance, they were harmed and suffered damages. Plaintiffs' reliance on Defendants' false material representations was a substantial factor in causing Plaintiffs harm.

106. Additional evidentiary facts constituting fraud in this matter are within Defendants' knowledge and possession and have been secreted by Defendants.

107. Defendants, and each of them, conspired together to perpetrated the fraud alleged herein over the course of several years.

108. Defendants are guilty of malice, fraud and/or oppression, as defined in California Civil Code § 3294. Defendants' actions were malicious and done willfully, in conscious disregard of the rights and safety of Plaintiffs in that the actions were calculated to injure Plaintiffs. As such, Plaintiffs are entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

### SEVENTH CAUSE OF ACTION

### VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 et seq.

### (Against all Defendants)

109. Plaintiffs incorporate here each and every allegation set forth above.

110. Defendant BOA's violation of the Rosenthal Act, RESPA, its negligence, fraud and illegal foreclosure activities, as alleged herein, constitute unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and Professions Code § 17200 et seq.

111. Defendant WMC's violation of TILA, RESPA, its negligence, breach of fiduciary

1 duty, fraud, breach of contract and breach of the implied covenant of good faith and fair dealing,
2 as alleged herein, constitute unlawful, unfair, and/or fraudulent business practices, as defined in
3 the California Business and Professions Code § 17200 et seq.

4     112.   Defendants UVFR's, Michaels', and Zaft's negligence, breach of fiduciary duty,
5 fraud, breach of contract and breach of the implied covenant of good faith and fair dealing, as
6 alleged herein, constitute unlawful, unfair, and/or fraudulent business practices, as defined in the
7 California Business and Professions Code § 17200 et seq.

8     113.   As a result of Defendants' wrongful conduct, Plaintiffs have suffered various
9 damages and injuries according to proof at trial.

10     114.   Plaintiffs seek injunctive relief enjoining Defendants from engaging in the unfair
11 business practices described herein.

12     115.   Plaintiffs further seek restitution, disgorgement of sums wrongfully obtained, costs
13 of suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just and
14 proper.

**EIGHTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

**OR**

**IN THE ALTERNATIVE**

**RESCISSION OF CONTRACT**

**(Against Defendants Michaels, Zaft, and WMC)**

21     116.   Plaintiffs incorporate here each and every allegation set forth above.

22     117.   Plaintiffs entered into an agreement with Defendants WMC, Michaels, and Zaft,
23 whereby Defendants promised to provide Plaintiffs with an affordable loan.

24     118.   Plaintiffs fully performed their duties under the contract with Defendants Michaels,
25 Zaft, and WMC.

26     119.   Defendants Michaels, Zaft, and WMC breached their agreement with Plaintiffs
27 when they sold Plaintiffs a predatory loan with toxic terms. Further Defendants Michaels, Zaft,
28 and WMC breached their agreement with Plaintiffs by failing to exercise reasonable efforts and

due diligence as promised, thus failing to provide Plaintiffs with an affordable loan. Defendants also breached their agreement with Plaintiffs by committing wrongful acts, including but not limited to, intentionally or negligently failing to obtain payment and interest rates as promised, failing to submit an accurate loan application, failing to supervise, failing to provide loan documents for Plaintiffs' review prior to closing, and failing to explain the loan documents to the Plaintiffs. Defendants further breached their duties when they failed to refinance the mortgage as promised, resulting in Plaintiffs' payments increasing substantially shortly after the Loan agreement was signed.

120. In the alternative, no contract existed between Plaintiffs and Defendants Michaels, Zaft, and WMC because of a mutual mistake relating to the basic or material contractual terms alleged above. This mutual mistake was not caused by Plaintiffs' neglect of their legal obligations. Defendants Michaels, Zaft, and WMC were aware of Plaintiffs' mistaken belief with respect to the material terms alleged above, and unfairly utilized that mistaken belief in a manner that enabled them to take advantage of the Plaintiffs.

121. As a result of Defendants' wrongful conduct, Plaintiffs have suffered various damages and injuries according to proof at trial.

122. Plaintiffs further seek rescission of the loan, restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

**NINTH CAUSE OF ACTION**

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

**(Against Defendants Michaels, Zaft, and WMC)**

123. Plaintiffs incorporate here each and every allegation set forth above.

124. A duty of good faith and fair dealing was implied by law into the contract at issue in this action at its inception. Defendants' duties of good faith and fair dealing included, but were not limited to, the following: (1) Defendants had a duty to pay at least as much regard to Plaintiffs' financial interests as to Defendants' financial interests; (2) Defendants had a duty to comply with all applicable laws in the State of California; (3) Defendants agreed to act in good faith and deal

fairly with Plaintiffs when they entered into the mortgage and accepted payments from Plaintiffs. Defendants thereby assumed obligations of good faith and fair dealing toward Plaintiffs and thereby agreed to abide by such obligations.

125. Nevertheless, Defendants breached the implied duty of good faith and fair dealing owed to Plaintiffs by, among other things, performing acts and failing to act as alleged herein, and by failing to perform the duties specifically enumerated herein. Defendants further breached the duty of good faith and fair dealing by:

    a. Failing to pay at least as much regard to Plaintiffs' interests as to Defendants' interests;

    b. Failing to disclose to Plaintiffs the true nature of the loan that is the subject of this action;

    c. Failing to give Plaintiffs the requisite notice and disclosures;

    d. Directing Plaintiffs into a toxic loan.

126. In the absence of a reasonable basis for doing so, and with full knowledge and reckless disregard of the consequences, Defendants acted in bad faith toward Plaintiffs by, among other things, failing to comply with all applicable laws.

127. Plaintiffs are informed and believe, and thereon allege that Defendants have a pattern and practice of similar bad faith conduct toward other borrowers who are similarly situated.

128. As a proximate result of Defendants' breaches of the covenant of good faith and fair dealing alleged herein, Plaintiffs have suffered damages, incurred attorneys' fees and costs to recover the Property, suffered a loss of reputation and goodwill, suffered emotional distress, and suffered other economic losses and damages in amounts not yet fully ascertained but within the jurisdiction of this Court.

129. Defendants pursued said course of conduct intentionally and maliciously and in conscious disregard of the rights of the Plaintiffs. Further, Defendants' refusal to follow through with their duty to assist Plaintiffs was made with the intent to intimidate, vex and harass Plaintiffs so as to discourage them from pursuing their legal rights under the mortgage law. In order to

deter such conduct of Defendants in the future, and to prevent repetition thereof as a practice, by way of punishment and as example, Plaintiffs pray that exemplary damages be awarded according to proof at trial pursuant to California Civil Code § 3294.

### DEMAND FOR JURY TRIAL AND PRAYER FOR DAMAGES

Plaintiffs Stephen W. Branco and Sari Humes Branco demand a trial by jury.

WHEREFORE, Plaintiffs pray for judgment and order against Defendants, as follows:

1. That judgment be entered in Plaintiffs' favor and against Defendants, and each of them;
2. For an order requiring Defendants to show cause, if they have any, why they should not be enjoined as set forth below, during the pendency of the action;
3. For a temporary restraining order, preliminary and permanent injunction preventing Defendants, or anyone acting in concert with them, from collecting on the subject Loan and from causing the Property to be sold, assigned or transferred to a third party;
4. For an order stating that Defendants engaged in unfair business practices;
5. For damages, disgorgement, and injunctive relief under California's common and statutory law of unfair business practices;
6. For compensatory and statutory damages, attorneys' fees and costs according to proof at trial;
7. For exemplary damages in an amount sufficient to punish Defendants' wrongful conduct and deter future misconduct;
8. For such other and further relief as the Court may deem just and proper.

DATED: December 17, 2009

                Respectfully submitted

                /s/ Catherine King
                CATHERINE KING
                Attorney for Plaintiffs Stephen W. Branco and Sari Humes Branco